## THE GAFF ESTATE CO. *v.* GROTE.

*Landlord and tenant—Breach of condition to surrender in good
condition—Damage to building by manufacturing sal soda
—Evidence—Use under prior lease admissible to prove
knowledge by lessor—Charge to jury—Inaccurate state-
ment of fact not misleading where testimony clear—
Charge as to lessor's knowledge of use, not improper—
Lessor cannot recover damages where manufacturing
conducted in usual manner—Charge ignoring purpose of
lease and lessor's knowledge of intended use, erroneous—
Burden on lessee to prove injury resulted from cus-
tomary use—Judgment for lessee unwarranted, when.*

1. Evidence of use under prior leases *held* admissible to show
   lessor's knowledge as to use to which building was to
   be put under new lease, in action for injuries to prem-
   ises caused by breach of conditions.

2. Instruction that for approximately 22 years lessee had en-
   gaged in manufacture of sal soda *held* not misleading,
   though for 3 years it was not so engaged because govern-
   ment had taken over soda ash, since testimony on point
   was clear.

3. Instruction that leased premises were used for manufacture
   and storage of sal soda, "all of which was well known
   to" lessor, *held* not improper, in view of evidence that
   lessor or its agent knew for what purposes premises were
   being used.

4. Under lease of building for manufacture of sal soda, ex-
   empting from liability for ordinary wear and tear, les-
   sor cannot recover for injury resulting from manufacture
   in usual manner.

5. Instruction that, if lessee made sal soda in usual and
   customary way, and thus caused injury to premises, les-
   sor could not recover, *held* improperly given, since not
   taking into consideration purpose of lease, or lessor's
   knowledge that sal soda was to be manufactured.

6. Where, in lessor's action for injury to building, lessor has
   shown waste has been committed, not in manner which
   would be considered ordinary wear and tear, lessee must

introduce evidence that injury resulted from customary usage, though burden of proof is on lessor throughout.

7. Judgment for lessee, in action for injury resulting from manufacture of sal soda, *held* unwarranted, in absence of showing that it was conducted in usual manner.

(Decided May 24, 1926.)

ERROR: Court of Appeals for Hamilton county.

*Mr. Oliver S. Bryant,* for plaintiff in error.
*Mr. John C. Healy,* for defendant in error.

BUCHWALTER, P. J. The action below was brought by the Gaff Estate against W. D. Grote for damages for injury to a building, alleged to be the result of a breach of the conditions of a written lease. The lease provided:

"Except as to the roof, and unless the same be destroyed or injured by fire or storm, lessee agrees to make all repairs necessary to keep and maintain said premises in as good order and condition as they now are (ordinary wear and tear thereof excepted), or may be required to be put by the public authorities."

The lease further provided that, at expiration of the lease, "said premises shall be surrenderd in as good condition as they now are or may be put by said lessor, except as to ordinary wear and tear and injury caused by fire or storm therein." This lease was to begin on May 1, 1920, and run for a period of 5 years.

The lease had a further provision that it could be terminated by either party on 3 months notice. Such notice was given by the defendant, Grote, that he would terminate the lease in October, and, by

consent of the parties, the defendant continued to occupy the premises as a tenant from month to month until December, 1922.

Upon hearing in the trial court, the jury rendered a verdict for the defendant, on which judgment was entered, and it is to reverse that judgment that error proceedings are now prosecuted in this court.

The main grounds of error complained of are:

The giving of special written charges 1, 2, and 4, which were offered by defendant, to the giving of which plaintiff reserved its exceptions; errors in the general charge of the court; that the verdict was against the weight of the evidence; that the court erred in the admission and rejection of certain evidence.

It appears from the evidence that ever since 1898 Rachel S. Gaff, or her agents or representatives, had entered into leases similar to the one here in question with the American Chemical Company, by W. D. Grote, its president, up to the time that the lease under which this action was brought was entered into by the Gaff Estate, a corporation, with W. D. Grote, doing business as the American Chemical Company, for a period of 5 years beginning May 1, 1920.

It was conceded by counsel for plaintiff in error, the Gaff Estate, that among the products manufactured during these various leases to the Chemical Company was one known as sal soda, although said counsel contended that all the evidence as to the use of the building prior to the lease beginning May 1, 1920, was irrelevant and immaterial.

The record also shows that during the 3 years

prior to the execution of the lease to Grote no sal soda was manufactured, because the United States government had requisitioned all soda ash, so that the manufacture of sal soda could not be carried on.

We consider that the evidence as to the use to which the premises were put from the year 1898 to May 1, 1920, under leases made practically to the same parties was admissible to show knowledge on the part of the lessor as to the purpose for which the building was to be used under the lease beginning May 1, 1920.

The special charges complained of are as follows:

"(1)   It is in evidence, and not denied, that the property described in the petition had been leased by the original owner, Rachel S. Gaff, in her lifetime to the American Chemical Company in 1898, for a term of years, and that renewals thereof for various successive periods were made first by her executor after her death, and, secondly, by certain trustees appointed by all the beneficiaries of her estate, and finally by a corporation in which the title to this and other lands belonging to her estate was vested; that in all these transactions with Rachel S. Gaff and the Gaff Estate in making these successive leases the American Chemical Company was represented by the defendant, William D. Grote, its president and general manager. That during all this period the American Chemical Company was engaged in the manufacture of sal soda, and the premises leased were used for such manufacture and for storage and warehouse purposes, all of which was well known to the plaintiff, and, when the lease to W. D. Grote was executed,

if it was known by the plaintiff that he (Grote) intended to continue to use the property for the same purpose and carry on the same business, then I charge you that the defendant had the right to continue the business of manufacturing sal soda on the premises described in the petition during any part of the time between the making of the lease and its surrender in the usual and customary way that such manufacture is conducted, and, if he did so carry on said business in the usual and ordinary way, the plaintiff cannot recover, even though in so carrying on such business he should cause some injury or damages to the premises.

"(2) When real estate is leased for manufacturing purposes, exempting the lessee as in the present case from liability, caused by the usual wear and tear to which the property is subjected in carrying on such business, the lessor is presumed to have protected himself against the hazards of damage by such use in the ordinary and usual way by the rental exacted from the lessee for any damage so occasioned. * * *

"(4) If the defendant made sal soda during the 26 days he admits, or during such other period in the usual and customary way, before the lease was terminated, the proof that he did so, and that this alone occasioned the injury complained of to the property, would not entitle the plaintiff to recover, and your verdict in that case must be for the defendant."

The first special charge is complained of because it states that during this period the American Chemical Company was engaged in the manufacture of sal soda, whereas for 3 years, it did not so

manufacture it, since the government, by taking over all soda ash, made it impossible to so manufacture.

We do not consider that this portion of the charge was misleading to the jury. The testimony on this point was clear, and, except for the action on the part of the government, the manufacture could have continued.

It was admitted by counsel for plaintiff in error that the said company manufactured sal soda during the various leases, although he objected to the relevancy of any testimony on this subject.

The charge goes on and says, "All of which was well known to the plaintiff." The statement as to the knowledge of the plaintiff was not improper, as the only evidence upon that subject did show that the plaintiff, or its agent, Watts, knew for what purposes the premises were being used.

The court then goes on to charge that, if it was known by the plaintiff that he (Grote) intended to continue the use of the property for the same purpose, the defendant then had the right to continue the business of manufacturing sal soda during the term of his lease, and that, if he carried on such manufacture in the way such manufacture is usually and customarily conducted, plaintiff could not recover, even though some injury was done the premises.

In 1 Taylor on Landlord and Tenant (9th Ed.), Section 356, it is said: "Not only is waste prohibited by law, but the covenant further requires the tenant to cultivate the lands in a husbandly manner, and in conformity to the usual and reasonable custom of the country. * * * The parties

may stipulate in what manner, and to what extent, the land shall be cultivated; but, unless such a stipulation is made, the parties are to be governed by the usual practice and custom of the neighborhood.''

We consider that such damage as is the result of the usual practice and custom in carrying on such business comes within the term ''ordinary wear and tear.''

The second special charge, which uses the term ''such use in the ordinary and usual way,'' is, therefore, not erroneous.

The fourth charge does not take into consideration for what purpose the lease was made, **nor** that the plaintiff had knowledge that sal soda was to be manufactured in the premises during the period of the lease. This charge, therefore, is incomplete, and should have been refused. We have examined the general charge, which is quite short, and do not find that there is any prejudicial error contained therein.

The burden of proof is, as the court stated, on the plaintiff, and the plaintiff must prove its case by a preponderance of the evidence. The burden of this proof does not shift, but, when the plaintiff has shown that waste has been committed, not in accordance with what would be considered ordinary wear and tear, the defendant is then called upon to introduce evidence to sustain his contention that the damage is within the provision of ordinary wear and tear, under the rule of customary usage.

There was no competent evidence to show that the defendant manufactured sal soda in the usual

and customary way, except as to the ingredients which were used. The evidence of defendant, W. D. Grote, showed that spillage of the solution would occur, and the solution would fall on the timbers if you did not watch it close, or if there was too much water in the tank, or if the steam was turned on too strong at the start, or if the soda ash was put into the solution too rapidly. There was also testimony that it was only through carelessness that spillage occurred, and that without spillage no deterioration, due to the manufacture of sal soda, would take place.

There was an attempt by the defendant to show that the materials used would not deteriorate timber if spilled thereon, but that they would have a preservative effect. The physical evidence is a sufficient answer to this contention, even if the jurors had no common knowledge of the effect. The defendant produced no evidence on his part of any attempt to prevent this admittedly preventable spillage. We therefore find that the verdict and judgment are manifestly against the weight of the evidence.

As the cause will have to be retried, we make no further comment upon the evidence.

For the reasons above stated, the judgment will be reversed, and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

HAMILTON and CUSHING, JJ., concur.